## LOUIS AND DOROTHY R. ADLER *v.* COMMISSION

Lee A. Hansen, Portland, Oregon, represented the plaintiffs.

Alfred B. Thomas, Assistant Attorney General, Salem, Oregon, represented defendant.

Decision for defendant rendered March 26, 1968.

EDWARD H. HOWELL, Judge.

This case involves the amount of taxable gain recognized by the plaintiffs in 1963 when the State Highway Commission acquired plaintiffs' property for construction of the Marquam Street Bridge extension. Plaintiffs received $15,000 in cash, a note for $13,780 and 1.48 acres of land from the highway commission in exchange for their property.

The first issue concerns the value of the land received by the plaintiffs. On their 1963 tax return plaintiffs assigned a value of $13,320 to the land. Upon audit the defendant's auditor proposed a value of $26,925, the value placed on the property by the State Highway Commission. Plaintiffs protested this valuation to the tax commission and after a hearing the commission issued its opinion and order finding the true cash value to be $21,000, which was the value assigned to the property by the Multnomah County Assessor.

Plaintiffs appealed the opinion and order to the Tax Court. At the trial plaintiffs' appraiser testified to a value of $13,000 and defendant's expert appraiser, using the market data approach based on sales of similar property, testified that the property had a true cash value of $28,500.

After considering the evidence and viewing the property this court concludes that the true cash value of the property is $21,000, the amount found by the tax commission on October 13, 1967.

The second issue involves how the taxable gain recognized by the plaintiffs should be computed.

The parties agree that plaintiffs' property was involuntarily converted and that the 1.48 acres of real

property received by plaintiffs is similar or related in service or use to the property taken by the highway commission.

ORS 316.295, relating to involuntary conversion, states in part:

"Involuntary conversion. (1) If property (as a result of its * * * condemnation * * *) is compulsorily or involuntarily converted:

"(a) Into property similar or related in service or use to the property so converted, no gain shall be recognized.

"(b) Into money or into property not similar or related in service or use to the converted property, * * * the gain, if any, shall be recognized except to the extent hereinafter provided in subparagraphs (A) and (B):

"(A) If the taxpayer * * * purchases other property similar or related in service or use to the property so converted, * * * at the election of the taxpayer the gain shall be recognized only to the extent that the amount realized upon such conversion * * * exceeds the cost of such other property * * *.

"* * * * * *"

If the plaintiffs had received only similar real property in exchange for the real property involuntarily converted, no gain on the transaction would have been recognized under subsection (1)(a) above.

Plaintiffs' case does not fall within subsection (1) (a) above as money was also received in addition to the real property.

The plaintiffs contend that commission Reg. 316.295 (2) (formerly 6.295(2)) fits the situation. That regulation states in part:

"(2) *Conversion into similar property.* * * *

"* * * * * *"

"If the funds received are reinvested in property only partly related or similar in use to the converted property, the proportion of gain represented by the similar or related use is subject to tax deferment, and the balance not so related is recognized as provided in ORS 316.295(1)(b)."

■ This regulation applies to cases involving reinvestment of the funds received from an involuntary conversion. An example would be where the funds received from a condemnation of a motel were reinvested in a motel and unimproved land. Here, however, plaintiffs received other similar real property, some cash and a note for the real property converted and the transaction stops at that point with no reinvestment of funds received from the conversion.

■ The transaction does not fit specifically into subsection (1)(b) of ORS 316.295 because that section refers to a conversion of plaintiffs' real property into "money *or* into property" and plaintiffs received both money *and* real property.

■■ Under ORS 316.260 the gain from the sale of property is the excess of the amount realized over the taxpayer's adjusted basis in the property. The amount realized from a sale is the money received plus the fair market value of any other property received by the seller. ORS 316.275 provides that upon a sale of property the entire amount of gain is recognized (taxable) with certain exceptions. Such exceptions would be exchanges of like kind property (ORS 316.281) and the special provision for deferring gain as found in subsection (1)(b)(A) of ORS 316.295, *supra,* where the taxpayer reinvests the funds received from the converted property.

■ Here there was no reinvestment of the funds received by the plaintiff. For the plaintiffs' property

acquired by the state the plaintiffs received other property and money. Plaintiffs did not use the money received to purchase other similar property. The other similar real property was conveyed to the plaintiff by the state in exchange for the real property taken from plaintiff.

As there was no reinvestment of proceeds received from the condemnation the taxable gain should be computed in the following manner:

| | |
|---|---:|
| Cash | $15,000 |
| Note | 13,780 |
| Land | 21,000 |
| Amount realized from conversion | $49,780 |
| Less plaintiffs' adjusted basis | –28,246 |
| Amount of gain | $21,534 |
| Less agreed amount of severance damages ($2,250) and expenses of sale ($437) | –2,687 |
| Net gain recognized | $18,847 |

The tax commission's method of computing plaintiffs' recognized gain from the transaction is approved.[1]

---

[1] Another approach to the computation is advanced by Vol I, *Research Institute of America Tax Coordinator,* ¶ I-2616, p 28, 133. Oregon's involuntary conversion statute, ORS 316.295, is the same as § 1033 of the Internal Revenue Code of 1954. Explaining this section of the Internal Revenue Code, the *Tax Coordinator* sets forth three categories. Section 3 fits the present case.

"1. *Receipt of cash or dissimilar property.* If the taxpayer elects the benefits of the nonrecognition rule, gain is recognized only to the extent that the cash and value of dissimilar property received on conversion exceeds the cost of the replacement property. If the taxpayer does not make the elec-

tion, the entire gain is recognized. These rules apply regardless of whether the conversion proceeds are received in one or more taxable years.

"2. *Receipt of similar property.* No part of the gain is recognized. Nonrecognition of gain is mandatory and not subject to the taxpayer's election as under (1).

"3. *Receipt of cash and similar property.* No mention is made in the law or regs of this situation. Putting the above two rules together, however, it would seem that if there was any gain on the transaction (cash plus fair market value of the similar property minus the adjusted basis of the converted property), rule (1) above would apply insofar as the gain was represented by the cash. That is the gain would be taxable to the extent of the cash unless the taxpayer acquired additional similar property and elected nonrecognition as to the amount so expended. As to any balance of the gain, it would be represented by the similar property and rule (2) would apply, making nonrecognition mandatory.

"* * * * *."

In the instant case under subsection 3 above this method and the method used by the tax commission reach the same result because the cash and note received by plaintiffs exceeds the amount of the gain.